# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**VERNORA WATSON**                                                                **PETITIONER**

**v.**                                                                                        **No. 3:17CV144-NBB-DAS**

**MDOC, ET AL.**                                                               **RESPONDENTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Vernora Watson for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has moved to dismiss the petition for failure to state a claim upon which relief could be granted. Ms. Watson has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the State's motion to dismiss will be granted and the instant petition will be dismissed for failure to state a claim upon which relief could be granted.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas*

*corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

**Facts and Procedural Posture**

Vernora Watson is in the custody of the Mississippi Department of Corrections and is currently housed at the Central Mississippi Correctional Facility in Pearl, Mississippi. Ms. Watson was convicted of murder in the Circuit Court of Panola County and sentenced on August 17, 2000, to serve a term of life in the custody of the Mississippi Department of Corrections (MDOC). *See* Exhibit A.[1] On May 14, 2001, the Mississippi Court of Appeals affirmed Ms. Watson's conviction and sentence. *Watson v. State,* 816 So. 1029 (Miss. Ct. App. 2002) (Cause No. 2000-KA-01936). In the instant petition, however, Ms. Watson has not challenged her conviction and sentence for murder; rather, she challenges the State's determination that she is

---

[1] The exhibits referenced in the instant memorandum opinion may be found in the State's motion to dismiss.

not eligible for parole.[2]

Ms. Watson attached to her petition a grievance filed with the Administrative Remedy Program (ARP) at the Mississippi Department of Corrections in August 2015 and the First Step Response to that grievance. ECF Doc. 1 at 16-18. The First Step Response, dated August 11, 2015, informed Ms. Watson that she was not eligible for parole because homicide was a crime of violence. ECF Doc. 1, p. 18. The First Step response also added that Ms. Watson could "petition the court for parole consideration after serving ten years of your sentence." *Id.*[3] MDOC officials informed the respondent that Ms. Watson did not complete the grievance process by seeking review through the second step. As such, she did not receive a certificate of completion to appeal the MDOC's decision on the grievance to the circuit court. *See* Exhibit F (Affidavit of LeTresia Stewart). Further, in August 2016, Ms. Watson filed a second grievance with ARP which MDOC officials returned to her, stating "that she had a previously accepted ARP (CMCF-15-1466) concerning the same issue." *Id.*

Ms. Watson also attached to her petition a copy of a letter dated October 20, 2015, acknowledging Watson's request to the trial court for consideration of parole under House Bill 585.

---

[2] Ms. Watson's federal petition for a writ of *habeas corpus* does not challenge her conviction and sentence on the merits, but her parole eligibility. She has filed several state court cases challenging the validity of her conviction and sentence. As Ms. Watson's present petition challenges only her parole eligibility, not the merits of her conviction, the court will not consider her state postconviction actions or the direct appeal of her conviction.

[3] Despite this additional language in the response to Ms. Watson's grievance, under state law, her crime, homicide, renders her ineligible for parole consideration by the trial court, as the trial court noted in its order attached to the instant petition. ECF Doc. 1, pp. 20-22. In addition, the Administrative Remedy Program provided an amended First Step response to Ms. Watson, removing the inaccurate language and stating that Watson was not eligible for parole because homicide is a crime of violence. A copy of that Amended grievance response may be found in Exhibit E; *see also* Exhibit F (Affidavit of LeTresia Stewart).

ECF Doc. 1 at 19. In addition, Watson attached an Order of the Panola County Circuit Court filed March 23, 2017, denying her petition for parole based on the trial court's determination that Watson's crime, murder, is a violent crime which is ineligible for parole under current state law. ECF Doc. 1, pp. 20-22. The trial judge concluded that, "[w]hen Watson might be released from custody is now an executive decision to be made by the proper MDOC or any other officials, and not a judicial decision to be made by this court." ECF Doc. 1, p. 22.

### Grounds for Relief

In the instant petition, Ms. Watson raises the following grounds for relief:

**Ground One**: Miss. Code Ann. § 47-7-3 language is contradictory in nature of its agenda.

**Ground Two**: That Panola County Circuit Court Judge Jimmy McClure has ordered that release is now an MDOC decision.

**Ground Three**: 14th USCA violation of Equal Protection Clause - Ex Post Facto restrictions.

Doc. 1. The court has construed Ms. Watson's petition to seek parole eligibility on her murder conviction and sentence.

### Grounds One and Two: Parole Eligibility

Ms. Watson argues in her response to the State's motion to dismiss that her challenge to parole eligibility is, indeed, a part of her sentence – and thus a proper ground for relief in the instant *habeas corpus* petition. As discussed below, however, that is not the case.

The instant federal petition for a writ of *habeas corpus* must be dismissed for failure to state a valid claim for relief. Ms. Watson's request for parole eligibility does not state a claim of constitutional magnitude and thus falls outside the realm of federal *habeas corpus* relief under 28 U.S.C. § 2254.

To maintain a petition for writ of *habeas corpus,* a petitioner must allege that she has been "deprived of some right secured to [her] by the Constitution or the laws of the United States." *Irving v. Thigpen*, 732 F.2d 1215, 1216 (5th Cir. 1984); *Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir. 1983); *Baker v. McCollan*, 443 U.S. 137 (1979). In the event that the petitioner has not alleged a deprivation of such a right, she has failed to state a claim for *habeas corpus* relief, and her claims must be dismissed. *Irving, supra* at 1216. Further, "[a] petition for federal *habeas corpus* relief based on any argument that state courts are incorrectly applying their own law [] is not a basis for relief." *Wansley v. Mississippi Dept. of Corrections, et al.*, 769 F.3d 309, 312 (5th Cir. 2014) (citations omitted).

Ms. Watson has challenged only her parole eligibility; as such, she has not set forth the deprivation of an interest protected by federal law. *See Wansley, supra*. Therefore, Ms. Watson's federal petition for a writ of *habeas corpus* seeking parole eligibility fails to state a claim for relief.

Whether Ms. Watson is eligible for or entitled to parole is a matter of Mississippi law. The parole statute *on the date of her conviction* read, in relevant part:

> 47–7–3. (1) Every prisoner who has been convicted of any offense against the State of Mississippi, and is confined in the execution of a judgment of such conviction in the Mississippi State Penitentiary for a definite term or terms of one (1) year or over, or for the term of his or her natural life, whose record of conduct shows that such prisoner has observed the rules of the penitentiary, and who has served not less than one-fourth (¼) of the total of such term or terms for which such prisoner was sentenced, or, if sentenced to serve a term or terms of thirty (30) years or more, or, if sentenced for the term of the natural life of such prisoner, has served not less than ten (10) years of such life sentence, may be released on parole as hereinafter provided, *except that*:
>
> …
>
> (g) *No person shall be eligible for parole who is convicted or whose suspended sentence is revoked after June 30, 1995.*

Miss. Code Ann. § 47-7-3(g) (1995 Miss. Laws Ch. 596 (S.B. 2175)) (emphasis added). That statute

became effective on June 30, 1995. Thus, at the time of her conviction, August 17, 2000, Ms. Watson was ineligible for parole.

The parole statutes in Miss. Code Ann. § 47-7-3(1), as amended, currently provide, in relevant part:

> (1) Every prisoner who has been convicted of any offense against the State of Mississippi, and is confined in the execution of a judgment of such conviction in the Mississippi Department of Corrections for a definite term or terms of one (1) year or over, or for the term of his or her natural life, whose record of conduct shows that such prisoner has observed the rules of the department, and who has served not less than one-fourth ( ¼ ) of the total of such term or terms for which such prisoner was sentenced, or, if sentenced to serve a term or terms of thirty (30) years or more, or, if sentenced for the term of the natural life of such prisoner, has served not less than ten (10) years of such life sentence, may be released on parole as hereinafter provided, *except that*:
>
> …
>
> (f) No person shall be eligible for parole who is convicted or whose suspended sentence is revoked after June 30, 1995, except that an offender convicted of only nonviolent crimes after June 30, 1995 may be eligible for parole if the offender meets the requirements in subsection (1) and this paragraph . . . . *For purposes of this paragraph, "nonviolent crime" means a felony **other than homicide** [and other crimes inapplicable to the instant case]*.
>
> …
>
> (g)(i) *No person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2, a sex crime or an offense that specifically prohibits parole release, shall be eligible for parole.*

(Emphasis added).[4] Miss. Code Ann. § 97-3-2(b) defines murder as a crime of violence. Thus, under the current parole statute, Ms. Watson *remains* ineligible for parole. Nothing has changed.

As discussed above, Ms. Watson was convicted for murder, a crime of violence, in Panola

---

[4] Miss. Code Ann. § 47-7-3(1)(g) has been added to govern parole eligibility for crimes committed after July 1, 2014. However, even that subsection states that an inmate who has committed a crime of violence under § 97-3-2 (such as murder) is ineligible for parole. *See* Miss. Code Ann. § 47-7-3(1)(g)(i).

County Circuit Court and sentenced to life in prison. Thus, even under the legislative amendments as codified in the *current* version of the parole statute in Miss. Code Ann. § 47-7-3(1), she Watson is ineligible for parole under state law.

Mississippi's parole statutes, Miss. Code Ann. § 47-7-1, *et seq.*, (1972), as amended, confer absolute discretion regarding parole on the Parole Board; therefore, a prisoner has no constitutionally protected liberty interest in parole. *See Scales v. Mississippi State Parole Board*, 831 F.2d 565 (5th Cir. 1987) ("In Mississippi, the absolute discretion conferred on the Parole Board affords a prisoner no constitutionally recognized liberty interest" in parole.); *Irving v. Thigpen, supra*, ("...the Mississippi [parole] statute does not create any constitutionally protected liberty interest in parole to which procedural due process considerations attach."); *see also Smith v. Mississippi Parole Board,* 478 F. App'x 97, 2017 WL 1645457 (5th Cir. May 10, 2012) (unpub.) ("The Mississippi statutes do not create a liberty interest and federal due process rights are not implicated by the denial of parole and the procedures by which parole is denied.").

Further, in *Hopson v. Mississippi State Parole Board,* 976 So.2d 973, 975 (Miss. Ct. App. 2008), the Mississippi Court of Appeals held that "'[b]y statute, the Parole Board is given 'absolute discretion' to determine who is entitled to parole within the boundaries of the factors set forth in [section] 47-7-3." Therefore, parole in Mississippi is not a right, but a privilege, which may be granted to a prisoner by the parole board under state law guidelines.

Additionally, the Mississippi Supreme Court held in *Mitchell v. State*, 561 So.2d 1037, 1039 (Miss. 1990), that "[t]he granting of parole or denial of parole . . . is the exclusive responsibility of the state parole board, which is independent of the circuit court's sentencing authority." *See also Johnson v. Miller*, 919 So.2d 273, 277 (Miss. Ct. App. 2005) ("In Mississippi, prisoners have 'no

constitutionally recognized liberty interest in parole.'") (citations omitted). In *Davis v. State*, 429 So.2d 262 (Miss. 1983) the Mississippi Supreme Court explained:

> A prisoner has no automatic entitlement to parole. It may be granted or withheld by the state – to be sure, not arbitrarily – as a matter of grace. That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668, 677 (1979).

*See also Davis v. Johnson*, 205 F. Supp. 2d 616, 619 (N.D. Miss. June 20, 2002) (where the District Court found that even a prisoner who may be eligible – and even approved – for parole "holds the smallest liberty interest, 'no more substantial than the inmate's hope ... a hope which is not protected by due process.'") (citing *Greenholtz, supra*). Both state and federal courts have repeatedly held that the Mississippi parole statutes do not confer a liberty interest regarding state inmates' eligibility for parole.

For these reasons, neither Ms. Watson nor any prisoner within the Mississippi Department of Corrections has a constitutionally recognized liberty interest in parole due to the discretionary nature of Mississippi's parole system. Absent the assertion of a federally protected constitutional right, Ms. Watson's request for parole eligibility fails to state a *habeas corpus* claim upon which relief can be granted.

### Ground Three: Equal Protection and Ex Post Facto Claims

Ms. Watson also argues that criminal defendants who are convicted at different times can face different punishments, including eligibility for parole. Though she couches this claim mostly in terms of equal protection, it could also be an ex post facto claim. The court will discuss both.

### Equal Protection

Put simply, the equal protection clause directs states to treat all similarly situated persons

alike. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). A state government can violate the Equal Protection Clause only by intentional discrimination. *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir. 1988). "Discriminatory purpose . . . implies more than intent as violation or as awareness of consequences[.] . . . It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group[.]" *Id.* (internal quotations, citations, and footnote omitted) (emphasis in original). A violation of the equal protection clause can occur only when the government action in question classifies or distinguishes between two or more relevant persons or groups. *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988). The plaintiff's equal protection claim in this case must therefore fail, as she has failed to identify "two or more relevant persons or groups" which the government has classified and treated differently – and to her detriment. *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996). Nearly every time a state passes a law, some people benefit, some are harmed, and other are unaffected. Ms. Watson has not even alleged that state elected officials passed the most recent parole statute for the purpose causing harm to a specific group. For these reasons, the plaintiff's Equal Protection claim will be dismissed for failure to state a constitutional question.

## Ex Post Facto Laws

Though not entirely clear, it appears that Ms. Watson also claims that the new parole statutes have caused her sentence to be more severe than those in effect at the time of her conviction. If true, these facts could give rise to a claim that the new statute violated the constitutional prohibition against ex post facto laws. The Constitution prohibits the imposition of retroactively-applied criminal statutes:

> The Framers of the U.S. Constitution adopted the Ex Post Facto Clause to protect future Americans against oppressive, retroactively imposed, legislative enactments. The enduring prominence of the Clause stems as much from its location in Article I, a position otherwise reserved for structural issues of broad democratic governance, as from its emphatic prohibition: "No state shall … pass any … ex post facto law."

Wayne A. Logan, The Ex Post Facto Clause and the Jurisprudence of Punishment, 35 Am. Crim. L. Rev. 1261, 1275 (1998) (internal citations and footnotes omitted). The Court defined an ex post facto law to be one "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed ...." *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26 (1867). In the present case, murder in Mississippi was punishable by imprisonment for life without the possibility of parole when Ms. Watson was convicted, and the punishment is the same now. Thus, Ms. Watson was not eligible for parole at the time she was convicted, and she is not eligible for parole now; as such, the new statute has not worked to her detriment. Thus, to the extent that she raises a ex post facto claim, that claim must also be dismissed.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 13th day of August, 2018.

    /s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE